UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| NEURBY CELENIA DIAZ, | ) | |
|---|---|---|
| Movant, | ) | |
| v. | ) | Case No. CV414-272 |
| | ) | CR413-150 |
| UNITED STATES OF AMERICA, | ) | |
| Respondent. | ) | |

# REPORT AND RECOMMENDATION

Neurby Diaz moves under 28 U.S.C. § 2255 to vacate her sentence for conspiring to transport women in interstate commerce for purposes of prostitution and for harboring illegal aliens. Doc. 25.[1] She contends that her attorney failed to properly consult with her about her appellate rights.[2] Doc. 25 at 4.

## I. BACKGROUND

Two years ago, the Government indicted Diaz for her role in a sex trafficking ring. *United States v. Mendez-Hernandez*, CR413-004, doc. 3

---

[1] All record cites are to the criminal docket in CR413-150 unless otherwise noted, and all page numbers cited are those created by the Court's electronic docketing software.

[2] At her recent evidentiary hearing, Diaz foreswore two claims in her original motion: (1) she unknowingly and involuntarily pled guilty because of her attorney's ineffective assistance; (2) the government failed to disclose evidence favorable to Diaz. Doc. 25 at 4. With those abandoned, the Court addresses only her "lost appeal" claim.

(S.D. Ga. Jan. 11, 2013). She ultimately pled guilty on July 18, 2013 to conspiracy to transport a person in interstate commerce for purposes of prostitution, and to harboring an illegal alien. Docs. 7, 20. In doing so, she waived her direct appeal and collateral review rights except in two narrow circumstances, one of which was the imposition of a sentence above the range recommended by the U.S. Sentencing Guidelines. Doc. 20 at 7.

Arvo Henifin represented Diaz throughout her case -- including during sentencing, where the district judge upwardly departed from the Guidelines range of 57-71 months and sentenced Diaz to 72 months imprisonment (*see* doc. 21). Docs. 7, 17. Diaz never directly appealed, but she timely filed the instant motion on December 16, 2014. Doc. 25. Henifin failed to timely file a Notice of Post-Conviction Consultation Certification ("Notice"),[3] so the Court, in response to Diaz's appellate rights claim, directed him to attest to whether he consulted with her about an appeal. Doc. 40 at 4. He averred that he had done so

---

[3] The Notice is a document the Court developed to memorialize counsel's consultation with his client and reflect the client's decision whether to appeal. *See Guyton v. United States*, 2013 WL 1808761 at * 2 (S.D. Ga. Apr. 29, 2013) (noting that the "Notice of Counsel's Post–Conviction Obligations" requires that both counsel and client execute and file the form, thus preserving a record of defendant's election regarding an appeal).

immediately after sentencing, though without an interpreter present. Doc. 42 at 2. Henifin also belatedly filed the Notice, which indicated that Diaz, after that consultation, declined to appeal. Doc. 41. Per the Court's instructions, Diaz then responded to Henifin's version of events. Doc. 44. Because genuine factual disputes remained, the Court held an evidentiary hearing on January 28, 2016. Doc. 57.

## II. ANALYSIS

Diaz contends that Henifin provided ineffective assistance by telling her "he didn't care about [her] outcome," and that "since [she] did not have money not to even bother to appeal and to sign papers." Doc. 25 at 5. She claims those papers "stated that he would not represent me and I did not plan to appeal." Doc. 33 at 8. In response to Henifin's affidavit detailing his post-sentencing, appeal consultations, (doc. 42), Diaz declared, under penalty of perjury, that after sentencing, she

> asked Mr. Hen[i]fin about an appeal. He told [her] not to worry about an appeal and with such appeal [she] could face more time. He then proceeded to pass a piece of paper and pen through the door telling [her] to sign the paper. He did not read the paper to [her]. [She] did not comprehend everything that was being said, the little that [she] did understand was that *the paper was not to appeal*. He told [her] not to appeal' that [she] would not get a court

3

appointed attorney and that his job was done; that [she] would have to hire an attorney and [she] did not have the means to do so.

Doc. 44 at 1 (emphasis added).

At the evidentiary hearing, Diaz elected not to testify and thus support these assertions. Represented by new counsel, Howard Anderson, she argued that (1) Henifin's failure to have an interpreter present immediately after sentencing when he discussed an appeal with Diaz rendered her decision to forgo one unknowing and involuntary, and (2) he gave incorrect advice, and thus provided constitutionally ineffective assistance, by telling her that she had no good grounds on which to appeal.[4] She then reasoned that she suffered prejudice as a

---

[4] Citing *North Carolina v. Pearce*, 395 U.S. 711 (1969), Anderson also argued that Henifin incorrectly advised Diaz that she might face a higher sentence on remand after a successful appeal. That, he contended, constituted ineffective assistance. The law on vindictiveness (what *Pearce* addresses), however, does not reach so broadly.

Certainly a presumption of vindictiveness arises when a prisoner successfully attacks a jury conviction and is then resentenced by the same judge after a second trial to a harsher sentence with no new evidence presented that justifies the increased prison time. *See Alabama v. Smith*, 490 U.S. 794, 802 (1989) (citing *Pearce*, 395 U.S. at 725-26). But no such presumption attaches when, for example, a higher sentence results from a *trial* that occurs on the heels of a successfully attacked *guilty plea*. *See Smith*, 490 U.S. at 803. Nor is a higher sentence problematic under *Pearce* "when the increased sentence was imposed by the second court in a two-tiered system which gave a defendant convicted of a misdemeanor in an inferior court the right to trial *de novo* in a superior court," *Smith*, 490 U.S. at 800 (citing *Colten v. Kentucky*, 407 U.S. 104 (1972)), or when a higher sentence is imposed by a new jury (rather than a judge) after a second trial. *See Chaffin v. Stynchcombe*, 412 U.S. 17 (1973). Most critically, even when the original sentencing judge imposes a higher sentence after his original is overturned on appeal, the new sentence implies no

4

result of that advice because her above-Guidelines sentence created a "reasonable probability that the court of appeals might have had a problem" with her term of imprisonment.

The Court notes that Diaz failed to testify and thus support her lawyer's *argument* that Henefin's failure to use a translator figured into her claimed lack of understanding  In any event, a failure to properly consult[5] with a defendant about an appeal can constitute ineffective assistance. "[W]hen there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that th[e] particular defendant

---

vindictiveness when supported by "on-the-record, wholly logical, nonvindictive reasons." *Texas v. McCullough*, 475 U.S. 134, 140 (1986).

When Henefin told Diaz that "she might get more time at a resentencing," then, he correctly conveyed the risks she faced and made no legal error that qualified as ineffective assistance. Diaz very much faced a higher sentence if, upon resentencing, the district judge concluded that record evidence logically supported its imposition and no actual evidence of vindictiveness existed. *See Wasman v. United States*, 468 U.S. 559, 568 (1984); *see also id.* at 567 ("*Pearce* was not written with a view to protecting against the mere possibility that, once the slate is wiped clean and the prosecution begins anew, a fresh sentence may be higher for some valid reason associated with the need for flexibility and discretion in the sentencing process.").

[5] "Consult" means "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Devine v. United States*, 520 F.3d 1286, 1288 (11th Cir. 2008) (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 478 (2000)).

5

reasonably demonstrated to counsel that [s]he was interested in appealing," an attorney has a duty to consult. *Roe*, 528 U.S. at 480.

If an attorney breaches his duty to consult (either by not consulting at all or by failing to properly consult), the defendant must still show prejudice from that breach. *Id.* at 481. That requires "demonstrat[ing] that there is a reasonable probability that, but for counsel's deficient failure to consult with h[er] about an appeal, [s]he would have timely appealed." *Id.* at 484. A reasonable probability, in turn, "is a probability sufficient to undermine confidence in the outcome." *United States v. Bejarano*, 751 F.3d 280, 285 (5th Cir. 2014) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)).

"[W]hether a given defendant has made the requisite [prejudice] showing will turn on the facts of a particular case." *Roe*, 528 U.S. at 485. Although the performance and prejudice prongs often overlap in duty to consult claims -- "both may be satisfied if the defendant shows nonfrivolous grounds for appeal," *id.* -- "they are not in all cases coextensive." *Id* at 486. If, for example, a defendant shows deficient performance through evidence that she "sufficiently demonstrated to counsel [her] interest in an appeal," she still needs something more to

6

establish that "[s]he would have instructed [her] counsel to file an appeal" had he properly consulted about the prospect. *Id.*

To begin, the Court fully credits Henifin's unrebutted testimony at the evidentiary hearing. He thoughtfully, credibly, and cogently answered every question posed. Diaz's motion statements and response to Henifin's pre-hearing affidavit, by contrast, deserve no weight. Their allegations of threats and dismissive treatment by Henifin are entirely contradicted by his testimony. And again, Diaz failed to take the stand to rebut her former lawyer's testimony.

The Court concludes that Henifin did not improperly consult with Diaz post sentencing by discussing her appellate rights without a translator. Three days before sentencing, he spent more than two hours with her and a translator preparing for sentencing. During that time, they spent 5-10 minutes discussing the basics of an appeal. He showed her the Notice and had the translator read her its contents, and he told her she would fill it out as part of the sentencing process. Henifin also told her that it was her choice whether to appeal her sentence, and he did not tell her what to choose. Critically, he "advise[d] her about the advantages and disadvantages of taking an appeal," including that "she

7

might get more time at a resentencing," though "she might get less time." Diaz did not sign the form that day.

Henifin testified that Diaz understood English well enough to run businesses in this country, and, more importantly, to converse with him on any number of topics, excepting complicated legal concepts. Indeed, she never expressed any concern to Henifin about English communications, even after he wrote legally important letters to her in English. And she knew that he would obtain a translator's services if he thought the conversation required it -- he'd done so before even without her asking.[6]

Henifin did not obtain the services of a translator when he spoke to Diaz after sentencing because he surmised that she adequately understood his advice. Had that not been the case, she could have easily asked for a translator, particularly since several were in a downstairs courtroom at the time servicing her Spanish-speaking co-conspirators' at their sentencings. Again, Diaz could have but did not testify to the contrary on this point. Given that Henifin and Diaz had already

---

[6] At his initial meeting with Diaz, for example, Henifin reviewed the indictment with her without a translator (it was their first meeting and he had no idea she spoke limited English). He returned a second time, with a translator, to discuss the indictment again because he recognized that the topic was too complex for her to fully comprehend in English.

8

discussed the Notice and her appellate rights with a translator prior to sentencing, Henifin's decision to forgo a translator after sentencing does not fall below an objective standard of reasonableness. *Harrington v. Richter*, 562 U.S. 86, 88 (2011) (citing *Strickland v. Washington*, 466 U.S. 668, 688 (1984)).

His advice about the advantages and disadvantages of an appeal, correct or not, also constituted constitutionally effective assistance. Attorneys have an obligation to provide reasonably competent representation, but that does not mean counsel must always be right or give tactically perfect advice. *See id.* Instead, attorneys must only avoid "errors so fundamental" that their representation falls outside the "wide range of reasonable professional assistance." *Id.* Nothing Henifin said regarding an appeal crossed over that line.

Diaz argues that, because she received an above-Guidelines sentence, Henifin was "just wrong" about her chances of success on appeal. Because the Government and Henifin recommended that the district judge impose a sentence at the bottom end of the Guidelines range, she believes "there's a reasonable probability that the court of appeals might have" found her above-Guidelines sentence substantively

unreasonable, or that the district judge failed to sufficiently "articulate his reasons" for sentencing her so harshly.

The Court disagrees. As discussed *infra*, note 7, there's little to no likelihood, much less a reasonable probability, of a court reaching either of those conclusions. Henifin's advice likely was correct, not deficient or prejudicial, and thus surmounted the *Strickland* threshold for effective assistance. *See Roe*, 528 U.S. at 484. Put another way, even if Henifin breached his duty to consult by failing to have an interpreter present and/or by giving constitutionally deficient advice, Diaz fails to present evidence of nonfrivolous grounds she would raise in an appeal and which "may give weight to the contention that [she] would have appealed." *Roe*, 528 U.S. at 486. Both non-"lost appeal" claims that she raised but abandoned here (*see supra* n. 1), for example, would have failed without the need for an evidentiary hearing.[7] So too would any sentencing claim

---

[7] Even though Diaz's IAC plea-voluntariness claim (which she abandoned at the evidentiary hearing) would have been premature on direct appeal, the frivolity of both it and her abandoned *Brady* claim, which her guilty plea bars, *see Caceres v. United States*, 2014 WL 5761112 at * 12 (S.D. Fla. Nov. 5, 2014) ("Allegations that the government improperly withheld exculpatory evidence in violation of *Brady v. Maryland* . . . and any related defense is also waived by the lawful guilty plea."), underscore the futility of any appeal she might take. Too, the factual allegations her motion contains -- which revolve around actual innocence, *see, e.g.*, doc. 33 at 2 (explaining that "she had no pact with [her co-conspirators] and was not part of a conspiracy") -- and which presumably would form the basis of claims in a direct

10

since, although above-Guidelines, the 72 month sentence imposed likely would survive challenges to either its substantive or procedural reasonableness.[8]

Diaz's guilty plea reinforces the conclusion that any appeal would lack merit. At her Rule 11 hearing, she testified that she understood the charges and possible sentences, *see* doc. 35 at 25-28, and that she in fact engaged in the conduct which formed the basis for her convictions. *Id.* at 24-25. That's not to say that Diaz must "specify the grounds for [her]

---

appeal, contradict her sworn plea hearing testimony where she, while lucid and with a translated understanding of the proceedings, admitted the factual basis for the charges against her. Absent something to corroborate her current assertions or undermine the strong reasons to credit her Rule 11 version of events, *see Winthrop-Redin*, 767 F.3d at 1216-17, Diaz will not now, or on appeal, be heard to contradict her previous sworn testimony.

[8] Sentences are substantively unreasonable if they "fail[] to achieve the purposes of sentencing as stated in [18 U.S.C. §] 3553(a)." *United States v. Johnson*, 2016 WL 124846 at * 2 (11th Cir. Jan. 12, 2016). Nothing indicates that Diaz's sentence, which the district judge imposed after considering the § 3553(a) factors and which falls well below the statutory maximum, would fail to achieve those purposes.

Procedural reasonableness inquiries look at "whether the district court committed a significant procedural error, such as calculating improperly the guidelines range, failing to consider the section 3553(a) sentencing factors, basing the sentence on clearly erroneous facts, or failing to explain adequately the chosen sentence." *Johnson*, 2016 WL 124846 at * 2 (citing *Gall v. United States*, 552 U.S. 38, 591 (2007)). For Diaz, her Guidelines calculation appears correct. The district judge explicitly considered the § 3553(a) factors and explained his reasoning (*e.g.*, that Diaz actively assisted the conspiracy's ringleader and threatened one of the victims), and nothing -- certainly not an objection by Diaz -- suggests that any of the facts considered in imposing the sentence were clearly incorrect.

11

appeal and show that they have some merit," *Roe*, 528 U.S. at 486 (quoting *Peguero v. United States*, 526 U.S. 23, 30 (1999)), but it does indicate that she had no intention of appealing, particularly in light of the appeal waiver her plea contained. Doc. 20 at 7; *see Roe*, 538 U.S. at 480 (appeal waivers are relevant to deciding whether defendant would have appealed).

Even after the Court sentenced her to an above-Guidelines, and thus appealable, sentence, nothing indicates she would have appealed. Henifin testified that after the sentencing hearing concluded, he and Diaz spoke for twenty minutes, in English[9] (the interpreters remained in the courtroom for the sentencings of Diaz's co-conspirators) inside the U.S. Marshal's holding cell at the courthouse. He "told her about her appellate rights, which meant that she could appeal the sentence because it was one month over Guidelines." He also opined that he saw no constitutional issues with her sentence (and thus little likelihood of success on appeal), but that she had the right to an appeal and that if she

---

[9] Henifin testified that over the course of representing Diaz, he met with her approximately fifteen times, the majority of which included an interpreter. He stated that although he spoke numerous times to her in English (*e.g.*, when he visited to review discovery with her, he came without an interpreter since many of the wiretap recordings were in her native language), he would not attempt to explain legally sophisticated concepts without an interpreter.

did so "she would have an attorney for that appeal." Critically, he testified that he told her the advantages of appealing: that if she won, "she might get less time during a resentencing," and the disadvantages: "that [resentencing] would be from scratch; she might get more time."

Henifin also informed Diaz that even if she won an appeal of her sentence, the court would remand for resentencing, not "a whole new trial," and that at resentencing, the recommended Guidelines range sentence likely would remain 57-71 months. That, he said, meant the judge could resentence her to 71 months and she would then have no ability to appeal the new sentence because of the limited appeal wavier in her plea agreement.

Henifin then presented Diaz with the Notice, which she'd reviewed three days before with the benefit of a translator. He "told her[, in English,] that if she wished to appeal that she should check the [Notice] where it sa[id] 'I wish to appeal my sentence' and then sign it." He explained that it was her decision and he would do "whatever she wanted." She signed it and then told him to check the "no appeal" box on the Notice. Indeed, "after the conversation [she] had [with Henifin] about what were the advantages, what were the disadvantages," of an

appeal, she "specifically told [Henifin] that she did not want to appeal." Neither in the holding cell nor thereafter did she ever "express any kind of interest or inkling in any form to" Henifin regarding an appeal. She never contacted him herself, nor did she pass messages through others.

Although Diaz appeared very depressed over her above-Guidelines sentence,[10] Henifin adequately informed her of her appellate rights, yet

---

[10] Sometimes an expression of dissatisfaction with a sentence can be enough to create a reasonable probability that a defendant would have appealed if properly consulted. *See Thompson v. United States*, 504 F.3d 1203, 1208 (11th Cir. 2007) ("Thompson was dissatisfied with what he perceived to be a disparate sentence compared to his similarly-situated co-defendants. Had Counsel adequately consulted with him about an appeal, there is a reasonable probability that Thompson would have exercised his right to appeal."); *Reed v. United States*, 2014 WL 2465563 at * 2 (S.D. Ga. June 2, 2014) (defendant was "exceedingly displeased with the sentence he received," and thus, "even though [he] may have had no non-frivolous grounds for appeal, there is a reasonable probability that he would have appealed but for counsel's deficient failure" to consult). Here, however, Diaz's expression of dissatisfaction came with adequate consultation and a written, "do not appeal" affirmation. It thus cannot alone suffice to show prejudice.

The Court also does not believe her claim that Henifin browbeat her into signing the Notice, either. *See, e.g.*, doc. 33 at 7-8 ("I asked my attorney why [I received incarceration instead of probation] if that's not what he told me [I would receive]. He replied that he did not care and his job was done and for not to attempt to appeal he would not represent me and no one else would. He told me to sign papers that stated that he would not represent me and I did not plan to appeal. . . . I feel he discriminated, used me and he took advantage of the fact that I do not know how to read or write."). As noted above, Henifin's testimony (the only testimony received at the evidentiary hearing) deserves great weight, while Diaz's written statements (which she could have reiterated through live, sworn testimony, yet did not) deserve very little. She demonstrably lied in her pleadings at times (*see, e.g., id.* at 8 (stating that Henifin forced her to sign papers indicating she "did not plan to appeal," yet one paragraph later stating that she wouldn't have signed those papers had she known what they said) and, consequently, the Court credits Henifin's version of events.

she never chose to exercise them, and affirmed that decision by signing the Notice. *See* doc. 41. Under those circumstances, Diaz has not shown that, "but for counsel's [allegedly] deficient conduct," she "would have instructed [Henifin] to file an appeal." *Roe*, 528 U.S. at 486. Her appeal-related IAC claim therefore fails.

## III. CONCLUSION

Accordingly, Diaz's § 2255 petition should be **DENIED**. Applying the Certificate of Appealability (COA) standards set forth in *Brown v. United States*, 2009 WL 307872 at * 1-2 (S.D. Ga. Feb. 9, 2009), however, the Court discerns one COA-worthy issue: whether, after sentencing, Henifin failed to properly consult with Diaz regarding her appellate rights by not having an interpreter present.[11] 28 U.S.C. § 2253(c)(1);

---

[11] Even after fully crediting his testimony, reasonable jurists could find debatable whether Diaz understood Henifin's advice about the advantages and disadvantages of taking an appeal. *See Miller-El v. Cockrel*, 537 U.S. 322, 337 (2003). By Henifin's own admission, complicated legal concepts explained in English eluded Diaz. Indeed, he felt it necessary to obtain a translator to explain the charges she faced after attempting to do so without one. Because the risks and benefits of appealing her sentence -- particularly given the interaction between the Guidelines, her plea agreement, and what could happen on remand -- could qualify as complex enough to warrant a translator, it's debatable whether not having a translator amounted to deficient performance.

Too, enough facts exist to debate whether Diaz suffered prejudice from not having a translator (*i.e.*, whether she would have appealed if given translated advice). Henifin knew she was "disappointed," and "depressed" about the 72 month sentence. *See Reed*, 2014 WL 2465563 at * 2 (defendant's expressed displeasure was sufficient,

Rule 11(a) of the Rules Governing Section 2255 Proceedings ("The district court *must* issue or deny a certificate of appealability when it enters a final order adverse to the applicant.") (emphasis added). And, as there is one non-frivolous issue to raise on appeal, an appeal would be taken in good faith. Thus, *in forma pauperis* status on appeal should likewise be **GRANTED**. 28 U.S.C. § 1915(a)(3).

**SO REPORTED AND RECOMMENDED**, this 7th day of March, 2016.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

despite no non-frivolous grounds for appeal, to show "a reasonable probability that he would have appealed but for counsel's deficient failure" to consult). The sentence here was somewhat surprising (both the Government and Henifin recommended to the Court a within-Guidelines, and thus unappealable, sentence). An appeal also would have cost Diaz nothing financially, and it was a pretty good bet that at worst she'd be resentenced at the top of the sentencing range, not above it (again, the *Government* recommended that). So, despite the plea agreement's appeal waiver, which didn't apply because her sentence was above-Guidelines, reasonable jurists could conclude that Diaz would have appealed had she received advice in Spanish.

16